IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEBRA JACKSON ET AL., )<br>    Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 14-23-KD-N |
| CITY OF SELMA, ET AL., ) | |
|     Defendants. ) | |

### ORDER

This matter is before the Court on Plaintiffs' Motion for Summary Judgment (Doc. 49-50), Defendants' Motion for Summary Judgment (Doc. 51-52)[1], Defendants' Response (Doc. 62), Plaintiff's[2] Response (Doc. 66), and Defendants' Reply (Doc. 67).

**I.      Procedural History**

On January 21, 2014, Plaintiffs commenced this action by filing suit against the City of Selma ("the City"), Chief William T. Riley ("Riley"), Sergeant Kenta Fulford ("Fulford"), Sergeant Sam Miller ("Miller"), and the Estate of Dwight Moorer ("Estate of Moorer"). (Doc. 1). On February 11, 2014, Defendants answered the complaint. (Doc. 5). On June 24, 2014, Plaintiffs filed an amended complaint listing Sheriff Harris Huffman as the administrator of the Estate of Moorer (Doc. 35), which Defendants answered on June 25, 2014. (Doc. 37).

On December 15, 2014, both Plaintiffs and Defendants filed opposing motions for summary judgment. (Docs. 49-50 and Docs. 51-52). On December 31, 2014, Plaintiffs' counsel

---

[1] Defendant Estate of Moorer did not file a motion for summary judgment, nor has it formally appeared in this case. "Defendants" is used to refer to the City of Selma, Riley, Fulford, and Miller.

[2] As discussed in the Court's previous order (Doc. 60), while Debra Jackson is permitted to proceed *pro se*, neither estates nor minors may proceed without counsel in this circuit. *See Franklin v. Garden State Life Ins.,* 462 F. App'x 928, 930 (11th Cir. 2012) (holding that estates and/or minors cannot proceed *pro se*). As such, the Plaintiff's response to the motion for summary judgment is considered on behalf of Debra Jackson, only.

filed a motion to withdraw (Doc. 60), which the Court granted on January 5, 2015. (Doc. 61).[3]

Also on January 5, 2015, the Defendants responded to the Plaintiffs' motion for summary judgment. (Doc. 62). On February 2, 2015 Plaintiff Debra Jackson responded.[4]

## II.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

---

[3] The Court's order informed the parties that under Eleventh Circuit precedent, neither an estate nor a minor may proceed *pro se* and instructed the Plaintiffs to obtain counsel on behalf of the Estate of Hill, Estate of Jackson, and Minor K.L.M. by January 19, 2015. (Doc. 60). On January 20, 2015, the Plaintiffs moved for an extension of time to find an attorney (Doc. 64), which the Court granted, extending the deadline to January 23, 2015. (Doc. 65). As of the date of this order, none of the Plaintiffs are represented by counsel. As the Plaintiffs' motion for summary judgment was filed while all plaintiffs were represented by counsel, the Court will consider its merits.

[4] The Plaintiffs' response deadlines were extended in order to permit them additional time to obtain counsel. (Docs. 61, 63, and 65).

FED.R.CIV.P. Rule 56(c) (Dec. 2010).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment.  *See, e.g., Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005); *Gerling Global Reins. Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001).  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted).  The Court is mindful that "[w]hen both parties move for summary judgment, the court must evaluate each motion on its own merits,  resolving all reasonable inferences against the party whose motion is under consideration."  *Muzzy Prods., Corp. v.*

3

*Sullivan Indus., Inc*., 194 F.Supp.2d 1360, 1378 (N.D. Ga. 2002)).  The Court has reviewed the facts submitted by each party and has made its own examination of the record.

### III.     Factual Background[5]

The events giving rise to this suit occurred on June 2, 2013, when former Selma Police officer Dwight Moorer ("Moorer") tragically shot and killed his former girlfriend, Keoshia Hill ("Hill"), and her step-father, Bill Jackson ("Mr. Jackson"). Prior to these events, Moorer and Hill had a child together, K.L.M. Debra Jackson ("Mrs. Jackson") is the mother of Hill, the grandmother of K.L.M., and the widow of Mr. Jackson. Mrs. Jackson brought suit individually and on behalf of the Estate of Hill, Estate of Jackson, and minor child K.L.M.

In May 2008, following background and personality evaluations, Moorer was hired as a police officer by the City of Selma. (Doc. 51-10 at 155).  During the course of his background check, it came to the attention of the City that Moorer had been accused of sexual assault while serving in the military. (Doc. 54-8 at 1, Dep. Weber at 11). The City investigated this report and was informed by military authorities that the report was unsubstantiated. (Doc. 54-1 at 1; Dep. Riley at 10-12). Moorer began with the police department shortly thereafter.

In March 2013, Moorer slapped Hill, knocking her glasses from her face and breaking them. Police were not called and no report was made. (Doc. 35 at 5). Sometime during the course of Hill and Moorer's relationship, and before April 26, 2013, Moorer broke the lights in Hill's vehicle. (Doc. 50 at 7). The police were not involved in this event, either.

On April 26, 2013, Selma police responded to a call at Moorer's apartment. Defendant Sergeant Samuel Miller ("Miller") was present, along with Sergeant Joseph Bills. Upon their

---

[5] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v.. City of Riviera Beach*, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

arrival, Miller encountered Hill, who informed him that Moorer had taken her keys and cell phone. Hill told Miller that Moorer had "jumped on her and beaten her." (Doc. 50 at 5). Hill had a cut lip and Moorer had scratches on his back. Moorer then "locked the apartment door and refused to exit the apartment or speak with officers" (Doc. 52 at 4) and left the scene by "[running] out the back door." (Doc. 35 at 6). Moorer called Miller, Miller instructed him to return to the scene, and Moorer did. (Doc. 52 at 4). Both Moorer and Hill admitted that they had been the cause of each other's injuries. Neither party was arrested and officers informed Moorer and Hill to separate and have no further contact.

On April 29, 2013, Hill, Mrs. Jackson, and Mr. Jackson met with Moorer's supervisor, Sergeant Kenta Fulford ("Fulford"), to speak about the April 26th incident. (Doc. 35 at 6). It is undisputed that at the meeting Fulford explained the process of obtaining an arrest warrant from a magistrate to Hill, though Hill never met with the magistrate. Later, Hill went to the police department to obtain a copy of the police report pertaining to the events of April 26, 2013, but she did not get one. At the request of Selma Police Chief Riley, Fulford delivered a copy of the report to Hill's place of work. (Doc. 51-4 at 5; Dep. Fulford at 65-67). Following these events, Hill did not attempt to obtain a protection from abuse order from Dallas County. (Id.).

In May 2013, Fulford completed an investigation and a report pertaining to the dispute between Hill and Moorer. The report was submitted to Chief Riley and recommended that Moorer be disciplined for his actions. (Doc. 51-13).

On June 2, 2013, Moorer shot and killed both Hill and Mr. Jackson. He then drove to the Jacksons' residence, where Mrs. Jackson and K.L.M. were present. Moorer entered the home and in the presence of Mrs. Jackson and K.L.M., discharged his weapon into the wall several times. Neither Mrs. Jackson nor K.L.M. were physically harmed. Moorer then exited the house and

committed suicide inside Hill's vehicle. At the time of these events, Moorer was off duty, in plain clothes, and using his personal firearm.

## IV.  Discussion

The Plaintiffs have raised three separate 42 U.S.C. §1983 claims: Count 1 Deliberate Indifference-Failure to Protect; Count 2 Deliberate Indifference-Hiring, Retention, Supervision, and Training; and Count 3 Denial of Fourteenth Amendment Procedural Due Process. (Doc. 1 at 11-15). Counts 4-9 are for state law claims. The Court begins by examining the § 1983 claims. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. There are two essential elements that must be explored in examining a § 1983 claim: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981).

    a.    Counts 1 and 2: Failure to Protect and Inadequate Training

Plaintiffs allege that Defendants violated the Plaintiffs' "Fourth[6] and Fourteenth Amendment" rights by acting with "deliberate indifference" when they "failed to protect the

---

[6] The Fourth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Court is at a loss as to how it is implicated under the facts of this case and Count 1 is analyzed with respect to the Fourteenth Amendment only.

6

plaintiffs from domestic violence inflicted by one of their own officers." (Doc. 35 at 12).[7] As explained by the Eleventh Circuit,

> In general, the government does not violate the Due Process Clause of the Fourteenth Amendment by failing to protect an individual against private violence. In certain limited circumstances, the Due Process Clause will impose on the government an affirmative duty of protection, which arises from the government's affirmative act of restraining the individual's freedom through incarceration, institutionalization, or other similar limitation of personal liberty. Thus, if the victim was not in the government's custody, state officers may only be held liable for a substantive due process violation if they are engaged in behavior that is arbitrary or conscience shocking in a constitutional sense.

*Hilderbrand v. Sanders*, 495 F. App'x 6, 7-8 (11th Cir. 2012) (internal quotations and citations omitted).

The Court finds that there are no facts to support that Moorer's actions occurred in his capacity as a police officer. At the time of the events of June 2, 2013, it is undisputed that Moorer was off duty, was not in uniform, and was travelling in his personal vehicle. (Doc. 52 at 8, 12). Additionally, the gun used was a personal firearm, not a department issued firearm. (Id. at 8-9).

Though Moorer was employed a police officer, and previously had a domestic dispute with Hill that the Defendants may have been aware of, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197 (1989). Because Moorer's actions were acts of private violence, the Defendants cannot be held liable under § 1983 because there has not been a deprivation of a Constitutional right. Further,

> [T]he due process clause of the Constitution provides no basis for imposing liability through application of the civil rights statutes on state officers who either negligently or even recklessly facilitate the criminal actions of a third party,

---

[7] Counts 1-3 reference the "defendants" as a whole but in examining the language of the complaint and the arguments contained in the Plaintiffs' motion for summary judgment (Doc. 50), the Court concludes that Counts 1-3 are brought against the City, Ripley, Fulford, and Miller, and not against the Estate of Moorer.

absent some special relationship between the victim and the criminal or between the victim and the state officer

*Wright v. City of Ozark*, 715 F.2d 1513, 1516 (11th Cir. 1983).

Plaintiffs argue, "[d]espite the knowledge of Defendants and the City of Selma regarding Moorer's prior misconduct and propensity to be violent, Defendants and the City of Selma failed and/or refused to protect the Plaintiffs from domestic violence inflicted by Moorer." (Doc. 50 at 17).[8] The United States Supreme Court has held, "The affirmative duty to protect *arises not from the State's knowledge of the individual's predicament* or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)(emphasis added). Here, the Plaintiffs were not incarcerated, institutionalized, and their personal liberty had not been restrained. As explained in *DeShaney*,

> In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney* at 200.

Plaintiffs argue that the Defendants acted with "deliberate indifference" when they failed to protect Moorer's victims. The Eleventh Circuit has provided instruction on this concept:

> For a while, this Court had concluded that state and local government entities could be held liable for substantive due process violations for their failure to protect victims from harm caused by third parties where the state, through its affirmative acts, put the victim in "special danger" of harm. See *Cornelius v. Town of Highland Lake, Ala.*, 880 F.2d 348 (11th Cir.1989). In *White v. Lemacks, 183 F.3d 1253, 1257–59 (11th Cir.1999)*, we concluded, however, that the "special relationship" and "special danger" doctrines were superceded by the

---

[8] In the Plaintiffs' motion for summary judgment, without citing any authority, they reference the elements required to prevail on a §1983 failure to protect claim predicated on violation of the Eighth Amendment. (Doc. 50 at 16-17). The Eighth Amendment is not implicated under the facts of this case.

standard employed by the Supreme Court in *Collins,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261. Thus, conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense. *See Collins,* 112 S.Ct. at 1070.

The Supreme Court has acknowledged that "the measure of what is conscience-shocking is no calibrated yard stick." *Lewis,* 118 S.Ct. at 1717. We know for certain, however, that a showing of negligence is insufficient to make out a constitutional due process claim. *Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998). And even intentional wrongs seldom violate the Due Process Clause. Acts "intended to injure in some way unjustifiable by any government interest" are "most likely to rise to the conscience-shocking level." *Id.* But, even conduct by a government actor that would amount to an intentional tort under state law will rise to the level of a substantive due process violation only if it also "shocks the conscience." *Dacosta v. Nwachukwa,* 304 F.3d 1045, 1048 (11th Cir.2002).

"[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis,* 118 S.Ct. at 1716 (1998)(quotation and citation omitted). Determinations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor *must be egregious—that is, shock the conscience—at the time the government actor made the decision. See e.g. DeShaney,* 109 S.Ct. at 1006 (noting that, because State had no constitutional duty to protect child against his father's violence, its failure to do so—though calamitous in hindsight—did not constitute a violation of the Due Process Clause); *see also Rodriguez v. Farrell,* 280 F.3d 1341, 1352–53 (11th Cir.2002) (concluding that hindsight could not be used to judge police officer's act of handcuffing suspect, but rather it was necessary to consider what the police officer knew or reasonably should have known at the time of the act).

In some cases, a state official's deliberate indifference will establish a substantive due process violation. But, "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another, and [the] concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Lewis,* 118 S.Ct. at 1718–19. In this non-custodial setting, a substantive due process violation would, at the very least, require a showing of deliberate indifference to an extremely great risk of serious injury to someone in Plaintiffs' position. *See McClendon v. City of Columbia,* 305 F.3d 314, 326 (5th Cir.2002) (stating that Plaintiff was required to demonstrate that "the defendant state official *at a minimum* acted with deliberate indifference toward the plaintiff"); *see also Nix v. Franklin County School Dist.,* 311 F.3d 1373, 1376 (11th Cir.2002) (concluding that deliberate indifference was insufficient to constitute a due-process violation in a non-custodial school setting)…

> To act with deliberate indifference, a state actor must know of and disregard an excessive—that is, an extremely great—risk to the victim's health or safety. *See McClendon,* 305 F.3d at 326 n. 8; *see also Johnson v. Dallas Indep. School Dist.,* 38 F.3d 198, 202 (5th Cir.1994).

*Waddell v. Hendry County Sheriff's Office,* 329 F. 3d 1300, 1305-06 (11th Cir. 2003)(emphasis in original). As evidence of deliberate indifference, the Plaintiffs point to several actions and non-actions by the Defendants. As the Eleventh Circuit did in *Waddell*, this Court turns to each of the Defendants' acts.

While serving in the military, Moorer was accused of sexual assault. (Doc. 54-8 at 1, Dep. Weber at 11). During his pre-employment screening, the City investigated this accusation and was informed by military authorities that it was unsubstantiated. (Doc. 54-1 at 1; Dep. Riley at 10-12). Plaintiffs contend that knowledge of this allegation put the Defendants on notice of Moorer's violent tendencies and propensity for violence. The Court finds that the City acted reasonably in investigating the matter and did not act with deliberate indifference by hiring Moorer after learning that the allegation was unsubstantiated. Additionally, though the Plaintiffs have alleged that Moorer suffered from post traumatic stress disorder, the Court finds no evidence in the record that the Defendants were aware of this prior to any of the events discussed herein.

The Plaintiffs next point to the events of April 26, 2013. On this day, Defendant Miller and Sergeant Joe Bills, responded to a domestic dispute involving Hill and Moorer. When the officers arrived, Hill told the officers that Moorer "had jumped on her and had beaten her." (Doc. 35 at 5). Moorer admitted knocking Hill down and that she had hit her head. (Doc. 50 at 5). Neither Moorer nor Hill were arrested but a report of the incident was completed by Selma Police.

Plaintiffs claim that Moorer should have been arrested as a result of this incident.[9] But whether Moorer should have been arrested is not the issue. The issue is whether when the offiers failed to arrest Moorer that they knew or should have known that he would pose an excessive risk to Hill.

Importantly, Defendants did not simply fail to make an arrest and then ignore the situation between Moorer and Hill. The night of the altercation, after each party had admitted to assaulting the other, the police instructed both parties to have no further contact with one another. On April 29, 2013, Hill, Mrs. Jackson, Mr. Jackson, and Fulford met to discuss Moorer and the events of April 26th, 2013. (Doc. 35 at 6). At that meeting, Fulford informed Hill about the process of obtaining a warrant from a magistrate. Chief Riley also called Hill to discuss the matter but his call was never returned. (Doc. 51-3 at 8; Dep. Riley at 50-53).

Considering each of these events, no reasonable fact finder could find that that the Defendants acted with deliberate indifference. Though with the benefit of hindsight, different decisions may have been made, at the time of these choices, the actions of the Defendants were neither arbitrary nor egregious, which is required to make a showing of deliberate indifference. As noted previously, "To act with deliberate indifference, a state actor must know of and *disregard* an excessive—that is, an extremely great—risk to the victim's health or safety." *Waddell v. Hendry County Sheriff's Office*, 329 F. 3d 1300, 1306 (11th Cir. 2003)(internal citations omitted)(emphasis added). Here, it cannot be said that the Defendants disregarded a risk to the Plaintiffs, as is required to show deliberate indifference. Accordingly, the Defendants motion for summary judgment as to Count 1 is **GRANTED** and the Plaintiffs' motion for summary judgment as to Count 1 is **DENIED**.

---

[9] Plaintiffs also claim that there was a dispute between Moorer and Hill in March 2013 in which he knocked her glasses from her face and broke them. Hill did not report the March incident to authorities. (Doc. 35 at 5).

In Count 2, the Plaintiffs assert a §1983 claim for inadequate training and/or supervision. Plaintiffs allege that the failure to train/supervise resulted in the deaths of Hill and Mr. Jackson. Like Count 1, Count 2 is brought under the "Fourth and Fourteenth Amendments." (Doc. 35 at 13). Inadequate police training can rise to the level of a policy or custom that is actionable under § 1983 in "limited circumstances." *City of Canton v. Harris,* 489 U.S. 378 (1989). "These limited circumstances only exist where the municipality's training program or supervision is inadequate, this failure to train or supervise is a city policy, and that city policy *results in the employees violating a citizen's constitutional rights.*" *Id.* at 389. (emphasis added). As there has been no constitutional violation, a claim for inadequate training or supervision cannot be sustained under §1983. Accordingly, the Defendants motion for summary judgment as to Count 2 is **GRANTED** and the Plaintiffs' motion for summary judgment as to Count 2 is **DENIED**.

   b.  **Count 3: "§1983 Denial of 14th Amendment Procedural Due Process"**

Plaintiffs allege a denial of Fourteenth Amendment procedural due process stating, "Specifically, the Defendants failed and/or refused to provide Plaintiff [Hill] with the required documentation of her domestic violence complaints." (Doc. 35 at 14-15). It is undisputed that Fulford delivered a copy of the police report to Hill's place of work. Mrs. Jackson's deposition testimony also confirms that Hill received a copy of the report. (Doc. 51-2 at 8; Dep. Jackson at 50). Additionally, as argued by the Defendants, the Eleventh Circuit has held that Alabama's survivorship law, Ala. Code § 6-5-462, applies to § 1983 actions. *See Estate of Gilliam ex rel. Waldroup v. City of Prattville,* 639 F.3d 1041 (11th Cir.2011), *cert. denied,* 132 S.Ct. 817 (2011). "Under that provision, 'a deceased's unfiled tort claims do not survive the death of the putative plaintiff.' " *Id.* at 1046 (quoting *Bassie v. Obstetrics & Gynecology Assocs. of Northwest Ala., P.C.,* 828 So.2d 280, 282 (Ala.2002)). However, "when a constitutional violation actually

causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute, Ala.Code § 6-5-410." *Id.* at 1047 *Accord Kruse v. Corizon, Inc.,* 2013 WL 3366040, at *2-3 (S.D.Ala. July 5, 2013) (discussing *Estate of Gilliam*). Here, the alleged violation did not cause Hill's death. Therefore, this claim, even if it had any merit, does not survive her death. Accordingly, the Defendants' motion for summary judgment as to Count 3 is **GRANTED** and Plaintiffs' motion for summary judgment as to Count 3 is **DENIED**.

### c. State Law Claims: Counts 4-9

As Counts 1-3, which are rooted in § 1983 have been disposed of, only counts 4-9, which are all state law claims, remain.[10] In that regard, 28 U.S.C. § 1367(c)(3) provides that the "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(3) the district court has dismissed all claims over which it has original jurisdiction[.]" The Eleventh Circuit "ha[s] encouraged district courts to dismiss any remaining state claims when ... the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1089 (11th Cir.2004) (per curiam). *See also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Mergens v. Dreyfoos,* 166 F.3d 1114, 1119 (11th Cir.1999) ("[T]his Court has noted that 'if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims.'" (quoting *L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 428 (11th Cir.1984) (citing *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130)));

---

[10] Whether these claims are based on state or federal law is unclear in the complaint, however, an examination of the arguments made with regard to counts 4-9 in the Plaintiffs' motion for summary judgment (Doc. 50) removes any ambiguity and makes clear that these claims are state law claims.

*Dockens v. Dekalb Cnty. Sch. Sys.,* 441 Fed.Appx. 704, 709 (11th Cir.2011) (per curiam) ("Once the district court properly granted summary judgment for the School System on the FMLA claims, no federal claims remained. It was not abuse of discretion for the court to decline supplemental jurisdiction over the state law claim."). Because the Court has granted summary judgment on or dismissed the federal claims, the Court finds that dismissal without prejudice of the remaining state law claims is appropriate. Accordingly, Counts 4-9 are **DISMISSED WITHOUT PREJUDICE**.

**V.     Conclusion**

Accordingly, it is **ORDERED** that Defendants City of Selma, Riley, Fulford, and Miller's Motion for Summary Judgment (Docs. 51-52) on Counts 1-3 as to all Plaintiffs is **GRANTED** and Plaintiffs' Motion for Summary Judgment (Docs. 49-50) on Counts 1-3 is **DENIED**. Counts 4-9 are **DISMISSED WITHOUT PREJUDICE**.

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the 13th day of February, 2015.

>/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**